No. 22590.

ARTHUR G. SMITH *v.* KENNETH L. MOORE, MALLIE M. MOORE, DORA V. BURKE OWEN, and DOROTHY G. MOORE.
(474 P.2d 794)

Decided August 31, 1970.     Rehearing denied October 13, 1970.

KLINGSMITH & RUSSELL, P. C. KLINGSMITH, for plaintiff in error.

SERAPHINE & ALEXANDER, CHARLES ALEXANDER, for defendants in error.

DAVIS, GRAHAM & STUBBS, WILLIAM HILLHOUSE, for amici curiae.

*En Banc.*

MR. JUSTICE PRINGLE delivered the opinion of the Court.

SINCE early in the 1900's coal has been removed by the underground mining method from Baldwin Mine located on certain property in Gunnison County. In 1946, L. D. Hardin severed the surface and mineral estates in certain of his property which included the Baldwin Mine and conveyed the surface rights to Otis Moore. The deed to Moore reserved to the grantor the mineral estate together with:
" . . . the right to ingress and egress upon said land for the purpose of mining said coal, oil, gas and other min-

erals, together with enough of the surface of the same as may be necessary and reasonable for the proper and convenient working of such minerals and substances." Hardin subsequently conveyed the mineral estate in that property in 1949 to E. L. Dutcher who conveyed the same in 1950 to Arthur G. Smith, hereinafter referred to as the plaintiff. Both grants of the mineral estate included the surface rights reserved by Hardin in his deed to Moore.

In 1965, the plaintiff filed a complaint against the defendants, successors in title to Otis Moore, alleging that underground mining is no longer a safe or economical method of extracting the coal from the Baldwin Mine and seeking a declaratory judgment as to his right to strip mine the coal. The defendants answered denying that strip mining was contemplated within the scope of the reservation of the mineral estate and counterclaiming for an injunction against any strip mining by the plaintiff until such time as adequate security would be furnished and the rights of the parties declared.

Following the trial, the judge found that coal has always been removed from the Baldwin Mine by the underground method, and that no coal in Gunnison County, where this mine is situated, has been mined by the strip mine method. The owners of the mineral estate have used the surface for ingress and egress as well as for tipples, storage, buildings, corrals, and other activities in connection with their underground mining. Only in recent years have the operators of the mine become aware of the conditions which they allege make it more safe and economical to remove the coal by strip mining. The trial judge consequently held that the rights of the owner of the minerals are limited to underground mining and the use of the surface necessary therefor. The trial court further found that the rights of the owner of the surface are for support for the surface, for no more interruption or displacement of the surface than is necessary in connection with underground mining, and for reimbursement for any damage

as a result of use of the surface by the owner of the mineral rights.

The plaintiff takes the position that the deed to the defendants' predecessor in title clearly reserved to the holder of the mineral estate the absolute right to destroy the surface to the extent necessary and reasonable for the proper mining of the underlying minerals. We do not agree that the reservation has the effect argued for by the plaintiff.

██ This court has held that when the surface and mineral estates have been severed, the owner of the mineral estate may remove the underlying minerals but must support the surface and cannot destroy the surface by strip mining. *Barker v. Mintz,* 73 Colo. 262, 215 P. 534. While the right to damage or destroy the surface may clearly be a subject for reservation, the rule of construction of a reservation of the minerals in a deed of conveyance is not to imply a right to injure or destroy the surface unless the right to do so is made clear and expressed in terms so plain as to admit of no doubt. *Evans Fuel Co. v. Leyda,* 77 Colo. 356, 236 P. 1023.

It is not argued by either side that the language used in the reservation of the mineral estate is ambiguous. The question is whether it is sufficient in clarity and certainty to qualify as a bargained for reservation of the right to damage or destroy the surface under the rule set forth in *Evans Fuel Co. v. Leyda, supra.*

In *Barker v. Mintz, supra,* the reservation of the mineral estate from the grant of the surface estate included the right to *use* so much land as may be convenient or necessary for the convenient and proper operation of the mines. This court held that the word "use" could not be read to include destruction of the surface by strip mining. The plaintiff argues that the omission of the word "use" from the reservation in this case removes any question of whether destruction of the surface was contemplated and makes it clear that an absolute right to destroy the surface was reserved in the deed.

■ There is no express provision in the reservation specifying that the surface may be destroyed to the extent necessary to remove the minerals below. Absent such an express provision we must look to the time when the surface rights were granted by Hardin to Moore to determine whether the terms of the reservation can be said to be so plain as to admit of no doubt. Focusing on 1946, it is clear that there had never been strip mining for coal in Gunnison County and that coal had been removed from the Baldwin Mine for more than forty years by the underground mining method. Coal was being extracted from an area where the over-burden was up to 500 feet thick which would have made strip mining operations uneconomical according to the testimony at the trial. The circumstances surrounding the time when the deed was executed strongly militate against the existence of any contemplation that strip mining would be necessary and that extensive destruction of the surface might be authorized without compensation. We cannot say that the language reserving enough of the surface as may be necessary for the proper working of the minerals is sufficient in clarity and certainty to qualify as a reservation of a right to destroy the surface by strip mining.

The plaintiff has studied the feasibility of strip mining over only a small portion of the land involved here. It may well be that much of the surface estate owned by the defendants might lend itself to strip mining. If we were to agree with the plaintiff's interpretation of the language of the reservation and find that the plaintiff has the right to destroy any portion of the surface necessary for the proper working of the coal without compensation to the defendants, we would in effect be holding that the grantor retained everything he granted by his his deed, and that the grantee received nothing. The general language in the reservation is not sufficient, in the light of the circumstances at the time of the reservation, to impose such an uncontemplated burden on the

surface estate. See *Farrell v. Sayre,* 129 Colo. 368, 270 P.2d 190.

The trial judge properly limited the surface right of the plaintiff to those acts incidental to the underground mining of coal.

The plaintiff further argues that if he does not have an absolute right to destroy the surface, then under the facts of the case he should be allowed to strip mine upon the posting of a bond insuring payment of damages to the defendants. In so arguing the plaintiff relies upon *Barker v. Mintz, supra,* where an injunction forbidding strip mining was set aside by this court under the peculiar circumstances of that case.

The question posed by the plaintiff is not properly before the court in this case. The trial judge did not here, as it did in *Barker, supra,* enjoin the plaintiff from strip mining on the defendants' property, but only declared the meaning of the reservations in the deed.

Because an injunction was not entered by the trial court and no findings pertinent thereto were made, we do not decide whether it would be an appropriate remedy under the facts of the present case.

The judgment is affirmed.

Mr. Justice Groves and Mr. Justice Lee not participating.