[No. 5133.]
[No. 2723 C. A.]

CAUGHLIN v. THE CAMPBELL-SELL BAKING COMPANY.

1. **Public Highway—Damages—Fastening of Teams—Negligence Per Se—Question of Fact.**

The leaving of a team upon the public highway restrained only by a 56-pound iron weight attached by straps to the horses' bits, is not negligence per se for which the owner is liable in damages for mischief done by the team; but the question whether such act is due care or negligence, is one to be determined from all the facts and circumstances surrounding the transaction.— P. 152.

2. **Appellate Practice—Findings by Court Same as Verdict by Jury.**

The findings of a trial court are entitled to the same consideration as the verdict of a jury, and, when equally honest and intelligent men might differ as to the finding, it will not be disturbed on appeal.—P. 155.

3. **Municipal Corporations — Damages — Fastening Teams on Streets—Negligence—Evidence—Findings.**

The driver of defendant's ·team left it in front of a store, while delivering articles of trade, fastened to a 56-pound iron weight connected by straps to the horses' bits. The driver had been employed for more than a year, and the horses were very gentle and had never been known to be frightened or to show evidence of viciousness; but, on this occasion, they ran away and injured plaintiff's bicycle, which was leaning against the curb. Held, that such facts were sufficient to sustain a finding that defendant was not guilty of negligence.—P. 155.

4. **Same—City Ordinance.**

The driver of defendant's team left it in front of· a store, while delivering articles of trade, restrained only by a 56-pound iron weight attached by straps to the horses' bits. The city ordinance imposed a penalty upon any person leaving a horse or other animal attached to a wagon in any street thereof without fastening the same by a chain or strap to a weight or some other stationary object, the weight to be of metal and weighing not less than 15 pounds for a single horse, and 25 pounds for a team. Held, that, while an ordinance cannot create or abrogate a civil duty enforceable at common law, and therefore could not be introduced in evidence for such purpose, it could be introduced as bearing upon the question of negligence; that is, the jury were entitled to consider compliance with the ordinance as a circumstance tending to show due care, and a violation thereof as tending to show negligence.—P. 156.

*Appeal from the District Court of Arapahoe County.*
*Hon. Frank T. Johnson, Judge.*

Action by Frank P. Caughlin against The Campbell-Sell Baking Company. From a judgment in favor of defendant, plaintiff appeals.

*Affirmed.*

Mr. THOMAS H. HARDCASTLE, for appellant. .

Mr. JOSHUA GROZIER, for appellee.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The plaintiff Caughlin says he left his bicycle on 15th street in the city of Denver leaning against

the adjacent curb-stone. While the driver of defendant's wagon, to which two horses were attached, was engaged in making delivery of the products of its bakery, which business the defendant was conducting in the city of Denver, the driver, negligently, as the complaint avers, left the wagon and team standing near plaintiff's vehicle without any person in charge or control thereof, by reason of which negligence the horses ran away, and with the wagon ran over plaintiff's bicycle and injured it, for which damages are sought by this action. The negligence of the defendant is denied in the answer. Upon these controverted issues the case was tried by the court without a jury. The findings were against the plaintiff, and judgment thereon was rendered dismissing the action. From this judgment the plaintiff took the case to the court of appeals.

For injuries of this character, the cause of action is negligence. Plaintiff in his complaint expressly grounded his action upon defendant's negligence in leaving the team and wagon in the street without any person in charge. From the admissions of the parties and specific findings of the court upon evidence which, though not altogether harmonious as to some minor particulars, as to important matters is not conflicting, it appears that defendant's driver has been employed for more than a year, and the team, though one of the horses was used only a short time, were very gentle and quiet, had traveled this same route every day, and had never been known to be frightened, or to show evidence of viciousness. On the morning of the accident, after plaintiff left his bicycle on 15th street, placing it in the ordinary way in which riders do, he went into Thompson's grocery store, and the defendant's driver with a team of horses drove up in front of the store, whether before or after plaintiff alighted from his bicycle the

witnesses do not agree, and stopped within two or three feet of the sidewalk, got off the wagon, put on the brakes, and let drop to the ground a weight, which was supposed to hold the horses, and then entered the store. While the driver was there, the team started up for some reason which is not disclosed by the evidence, notwithstanding the precautions taken by the driver, and ran over and injured plaintiff's bicycle. The court found that the driver exercised reasonable care in what he did; that there was nothing unusual about the team; that he had a right to drive them where he did and leave them in the manner in which he did, and from all the facts the finding was that defendant was not guilty of the negligence charged.

The horses were not hitched to any permanent object, but were restrained or held in check by means of an iron weight. To this piece of iron, weighing 56 pounds, which is carried in the wagon or hangs suspended therefrom when the horses are traveling, are attached two broad straps, one by which the weight is lifted from, and dropped to, the ground, and the other passes along under the tongue of the wagon to within about four feet of the heads of the horses. Fastened to this broad strap at this point is a ring, and connected with this ring are two other straps, one running to the mouth of each horse and attached to the rings of the bridle bits on both sides of his mouth, so that when the weight is dropped from the wagon, and the horses attempt to move, the strap pulls upon the bits of the horses on both sides at the same time.

The appellant's position is that the act of defendant's driver in leaving the team and wagon standing in the street as he did was negligence *per se* for which the defendant is liable in damages for any mischief that the horses may do. It is not the law

that the owner of a vehicle drawn by horses is absolutely liable for damages that they may do while they are being driven along, or left standing in, a public highway. The plaintiff unquestionably was lawfully on the street with his bicycle, and the evidence does not show that he was guilty of negligence that contributed to the injury. The defendant likewise was lawfully on the street with its horses and wagon. It is not true, however, as the plaintiff contends, that the mere act of leaving the horses and wagon on the street unattended is negligence *per se,* even if the fact that the horses got loose be some evidence of negligence. The latter point was so ruled in *Strup v. Edens,* 22 Wis. 432, though it was said that such a thing might occur notwithstanding due care in hitching.

The very cases cited by plaintiff show that where some restraint has been placed upon horses left standing in a street, the question whether such act is due care or negligence is for the jury to determine from all the facts and circumstances surrounding the transaction. Such was the case of *Rumsey v. Nelson,* 58 Vt. 590. There it was said that it might be considered as negligence in the fastening or leaving unattended of one horse that would not be so considered in another, and for that reason the character of the horse as being gentle or vicious is relevant.

In *Pearl v. Macauley,* 39 N. Y. Supp. 472, which was an action for personal injuries which resulted from plaintiff's being knocked down and run over by defendant's horse and wagon which had been left unattended in the street, the court instructed the jury that whether the act of the defendant was negligence for which he was responsible was for them to determine, and if the horse was not properly secured, defendant may be liable, otherwise not.

The plaintiff seems to rely upon the doctrine announced in the leading case of *Fletcher v. Rylands,* 1 Law Reps. Exchequer Cases 265, affirmed by the House of Lords in *Rylands v. Fletcher,* 3 H. L. Reps. 330. That was a case where the plaintiff was damaged by his property being flooded by water which, without any fault on his part, broke out of a reservoir constructed on defendants' lands by defendants' orders and maintained by them. The ruling was that where a person lawfully brings on his land something which, though harmless while it remains there, will naturally do mischief if it escape out of his land, it is his absolute duty to keep it in at his peril. This case has been followed by some of the courts of this country, and rejected by others.

In his valuable work on the Law of Torts (4th ed.), at page 442, Mr. Pollock says that the judgment of that case itself suggests the possibility of exceptions, and that the tendency of later decisions has been rather to encourage the discovery of exceptions than otherwise. He further suggests that the policy of the law might have been satisfied by requiring the defendant to insure diligence in proportion to the manifest risk, instead of making him in such cases an absolute insurer, and says: "Yet no case. has been found, not being closely similar in its facts, or within some previously recognized category, in which the unqualified rule of liability without proof of negligence has been enforced."

This court in the case of *G. B. & L. Ry. Co. v. Eagles,* 9 Colo. 544, cited the case, not, however, to the proposition asserted by this plaintiff, but in support of the doctrine that, in general, if a voluntary act, lawful in itself, may naturally and proximately result in the injury of another or the violation of his legal rights, the actor must at his peril see to it that such injury does not follow.

In an elaborate opinion by Bissell, J., in *Bishop v. Brown,* 14 Colo. App. 535, cited with approval as to one point in *City of Greeley v. Foster,* 32 Colo. 292, the learned judge discusses the case of *Rylands v. Fletcher,* and while not personally agreeing with the judgment therein, concedes it to be the law in England, though not in accordance with the general American doctrine. He says that the Rylands case was cited by this court in the Eagles case, *supra,* to the proposition (which was one of the exceptions established by that very case) that wherever injury is done and results from the act of the defendant, and the injury is the natural and probable consequence of the act and ought to have been foreseen, there is a presumption of negligence, and the defendant may be held though the plaintiff does not fully sustain the burden of establishing the negligence which is imposed upon him in another class of cases.

Whatever may be said of the unqualified doctrine of the English case, concerning which we express no opinion, it is not applicable to the case in hand. Here the defendant was lawfully on the highway with its team and wagon. While it is possible that an injury might be caused by leaving the team restrained as it was, we cannot say, either as a question of law or of fact, that it was the natural or probable result of such act that the team would break loose and cause mischief. All the cases upon this and analogous questions which we have been able to find decided by the courts of this country lay down the rule that the cause of action is based upon negligence, and negligence must be established by the plaintiff, or he cannot recover.

In addition to the cases already cited, *Belles v. Kellner,* 57 L. R. A. 627, is a good illustration. Quoting from *Griggs v. Fleckenstein,* 14 Minn. 81,

the court said: ''The degree of care required of the plaintiff, or those in charge of his horse at the time of the injury, is that which would be exercised by a person of ordinary care and prudence under like circumstances. It cannot be said that the fact of leaving the horse unhitched is in itself negligence. Whether it is negligence to leave a horse unhitched must depend upon the disposition of the horse, whether he was under the observation and control of some person all the time, and many other circumstances, and is a question to be determined by the jury from the facts in each case.''

The findings of the trial court are entitled to the same consideration at our hands as the verdict of a jury. It found that the fastening or restraining of the defendant's horses by means of the weight was a prudent and reasonable act of care upon its part, and we cannot say that the findings are not supported by the evidence. Equally honest and intelligent men might differ as to whether leaving the team and wagon as the defendant did was the exercise of proper care or a negligent act. The court below was of the opinion that it was a proper degree of care, and we cannot interfere with that finding.

The plaintiff apparently places reliance upon an observation of Tindal, C. J., in *Illidge v. Goodwin*, 5 C. & P. 190, which is cited and approved in *Colo. Mortgage Co. v. Rees*, 21 Colo. 435, 446. That was a case where the plaintiff was injured by a horse which was attached to a cart and left standing in the street by the defendant without any person to watch them, and no attempt was made to hitch or in any way restrain the animal. The remark of the court was in answer to the suggestion of counsel for defendant that the horse was frightened by a third person passing and striking the same, and that the particular injury was caused by the bad manage-

ment of plaintiff's shopman, who came out and laid hold of the horse's head. The learned Chief Justice said: ''If a man chooses to leave a cart standing in the street, he must take the risk of any mischief that may be done.''

It must be borne in mind that this observation was made for the purpose of showing that though there may have been an intervening cause, yet if the injury would not have occurred but for the negligence of the defendant, the latter is nevertheless liable. To the same point the case was cited in the Rees case, *supra*. The facts in the Illidge case were that the defendant himself had said that the horse was given to backing, and it was very wrong for the man to leave it in the street. As applicable to the facts before the court and bearing on the question of intervening cause, the Chief Justice was right, but it is not the law in this country, and we apprehend it never has been the law in England, that the owner of a gentle horse who leaves it standing in a street, fastened as an ordinarily prudent man would fasten such an animal in like circumstances, is responsible in damages for whatever injuries may occur if the horse breaks loose.

In *City of Denver v. Utzler,* 38 Colo. 300, the court in effect said that a person who leaves his horse in a public highway must use ordinary care and prudence in fastening or restraining the same so as to prevent injuries. This accords with the doctrine we have declared in this case.

In behalf of the defendant was admitted in evidence an ordinance of the city of Denver which imposes a penalty upon any person who leaves any horse or other animal attached to a wagon in any street in the city without securely fastening such horse, or without the same being fastened by chain or strap to a weight or some other stationary object,

the weight to be of metal, and weighing not less than 15 pounds for a single horse, and 25 pounds for a team of horses. The plaintiff says that there was error in this ruling because an ordinance of the city cannot create or abrogate a civil duty enforceable at the common law. To this are cited: *Phila. R. R. Co. v. Ervin,* 89 Pa. St. 71; *Heeney v. Sprague,* 11 R. I. 456. Such seems to be the rule, but the rule permits the introduction of an ordinance or statute of this character, not for the purpose of creating, or taking away, a civil liability, but as bearing upon the question of negligence. That is to say, the jury are entitled to consider compliance with an ordinance as a circumstance tending to show due care, and a violation as tending to show negligence. When this ordinance was admitted, the court said it might be considered for what it was worth. If it was considered at all, it must have been for the purpose above suggested, since the findings were in no wise based upon defendant's obedience to the ordinance, because the court was of opinion that defendant's restraint of the team was the exercise of the care which the civil law, not the ordinance, demands in cases of this kind.

Perceiving no error in the record, the judgment is affirmed. *Affirmed.*

Chief Justice Steele and Mr. Justice Gabbert concur.